TROY LAW, PLLC
John Troy (JT 0481)
Aaron B. Schweitzer (AS 6369)
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff, proposed FLSA Collective, and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
HISAMI ABE,
*on behalf of herself and others similarly situated,*

|  |  |
|---|---|
| Plaintiff, | Case No. 20-cv-05631 |
| v. | **29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION** |
| SEYAK CORP. d/b/a Restaurant Yamaguchi, AKIRA YAMAGUCHI, and YASUKO YAMAGUCHI, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

-------------------------------------------------------------------x

Plaintiff Hisami Abe (hereinafter "Abe"), on behalf of herself and others similarly situated, by and through her attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants Seyak Corp. d/b/a Restaurant Yamaguchi (hereinafter the "Corporate Defendant"), Akira Yamaguchi (hereinafter "Mr. Yamaguchi"), and Yasuko Yamaguchi (hereinafter "Mrs. Yamaguchi"), (hereinafter collectively the "Individual Defendants," collectively with the Corporate Defendant the "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Abe brings this action on behalf of herself and other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, and of the New York Labor Law ("NYLL"), N.Y. Lab. L., arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2.      Abe alleges pursuant to FLSA that she is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) misappropriated tips, (4) liquidated damages, (5) prejudgment and postjudgment interest, and/or (6) reasonable attorneys' fees and costs.

3.      Abe further alleges pursuant to NYLL and Section 146 of Title 12 of the New York Codes, Rules, and Regulations (the "Wage Order") that she is entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) misappropriated tips, (4) unpaid spread-of-time, (5) liquidated damages, (6) penalties for failure to provide a wage notice at time of hire, (7) penalties for failure to provide wage statements with each payment of wages, (8) prejudgment and postjudgment interest, and (9) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

5.      This Court has supplemental jurisdiction over Abe's state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

6.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York.

## PLAINTIFF

7.      Abe was employed by the Defendants from on or about May 1, 2019 through on or about March 22, 2020 to work as a server at Defendants' Japanese restaurant.

## DEFENDANTS

**CORPORATE DEFENDANT**

8.      Corporate Defendant is a domestic business corporation with a principal place of business at 49 Main Street, Port Washington, NY 11050, where it operates a Japanese restaurant. Corporate Defendant's registered address for service of process, and registered principal executive office, are both at 19 S Bayles Avenue, Port Washington, NY 11050, which is a piece of real property which the Individual Defendants own, and at which they are domiciled and reside.

9.      Corporate Defendant was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00 per year, because it operated 6 days per week, 52 weeks per year, and upon information and belief generated about $5,000.00 per day. Restaurant Yamaguchi seats 72 in the dining room, with more space available at the bar and the sushi bar, and is typically packed full of customers, as it is a very popular restaurant in Port Washington.

10.      Corporate Defendant is a business engaged in interstate or foreign commerce, which upon information and belief purchases and sells fish that were caught and/or farmed outside of New York State territorial waters, and which upon information and belief purchases and sells imported alcohols; and employees of which, including Plaintiff, handled goods moved in interstate commerce including cleaning supplies.

**INDIVIDUAL DEFENDANTS**

11.      Individual Defendants are husband and wife.

12.      Individual Defendants own, and are domiciled at and reside at, 19 S Bayles Avenue, Port Washington, NY 11050.

13.      Mr. Yamaguchi is a part-owner of, the Chief Executive Officer of, and the Alcoholic Beverage Control Principal for the Corporate Defendant, and an active manager at and head sushi chef for Restaurant Yamaguchi, and in those roles (1) had the authority to hire and fire

employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

14.     Mr. Yamaguchi acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with the Corporate Defendant.

15.     Mrs. Yamaguchi is a part owner of the Corporate Defendant, and an active manager at and hostess for Restaurant Yamaguchi, and in that role (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

16.     Mrs. Yamaguchi hired Abe.

17.     Mrs. Yamaguchi collected Abe's tips, and the tips of other servers, each day for the tip pool.

18.     Mrs. Yamaguchi acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with the Corporate Defendant.

## STATEMENT OF FACTS

19.     Abe was employed by the Defendants from on or about May 1, 2019 through on or about March 22, 2020 to work as a server at Defendants' Japanese restaurant.

20.     Abe was hired on or about May 1, 2019 by Mrs. Yamaguchi.

21.     At the time she was hired, Abe was not given a wage notice, either in English or in her primary language of Japanese, that included all of the following information: her rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

22.     Abe was not given such a wage notice at any time during her employment after her hiring.

23.     Throughout Abe's employment, Restaurant Yamaguchi maintained a shift system for servers: from about 11:00 AM through about 3:30 PM for the lunch service, and from about 5:00 PM through about 10:30 PM for the dinner service.

24.     From on or about May 1, 2019 through on or about January 5, 2020, Abe worked the lunch service Tuesdays through Fridays, and the dinner service Tuesdays, Wednesdays, Thursdays, and Sundays. This amounted to a workweek of about 45.50 hours. During this period, Abe worked a spread of time greater than 10 hours 3 days per week.

25.     From on or about January 6, 2020 through on or about February 15, 2020, Abe worked the dinner service Tuesdays, Wednesdays, Thursdays, Saturdays, and Sundays. This amounted to a workweek of about 22.00 hours.

26.     From on or about February 16, 2020 through on or about March 22, 2020, Abe worked the lunch service Tuesdays through Fridays, and the dinner service Tuesdays, Wednesdays, Thursdays, Saturdays, and Sundays. This amounted to a workweek of about 45.50 hours. During this period, Abe worked a spread of time greater than 10 hours 3 days per week.

27.    Since on or about March 22, 2020, Restaurant Yamaguchi has not offered dine-in service due to the COVID-19 pandemic, and accordingly Abe has not worked as a server for Restaurant Yamaguchi since on or about March 22, 2020.

28.    When Abe worked the lunch service, she would spend from about 12:00 PM through about 3:00 PM serving customers, and from about 11:00 AM through 12:00 PM and from about 3:00 PM through about 3:30 PM performing non-tipped side work, including but not limited to clearing tables, wiping down tables, vacuuming the floor, cleaning the bathroom, and preparing ingredients including but not limited to tofu and vegetables.

29.    When Abe worked the dinner service, she would spend from about 5:30 PM through about 9:00 PM serving customers, and from about 5:00 PM through about 5:30 PM and from about 9:00 PM through about 10:30 PM performing non-tipped side work, including but not limited to clearing tables, wiping down tables, vacuuming the floor, cleaning the bathroom, and preparing ingredients including but not limited to tofu and vegetables.

30.    Throughout her employment, the amount of time each working day Abe spent performing non-tipped side work exceeded 20% of her working day, and typically amounted to about 35% of her working day.

31.    Throughout her employment, Defendants paid Abe at a rate of $4.00 per hour for each hour worked each week, including hours worked in excess of 40 per week.

32.    In 2019 and 2020, the federal minimum wage was $7.25 per hour, with a maximum permissible tip credit of $5.12 per hour, for a minimum permissible cash wage of $2.13 per hour.

33.    In 2019, the applicable New York minimum wage was $12.00 per hour, with a maximum permissible tip credit of $4.00 per hour, for a minimum permissible cash wage of $8.00 per hour.

34.     In 2020, the applicable New York minimum wage was $13.00 per hour, with a maximum permissible tip credit of $4.35 per hour, for a minimum permissible cash wage of $8.65 per hour.

35.     However, Defendants were not permitted to take a tip credit with respect to Abe's wage.

36.     At no point during Abe's employment did Defendants inform her, either verbally or in writing, that they were taking a tip credit with respect to the minimum wage or the amount of the tip credit taken.

37.     In addition to failing to furnish Abe a wage notice, Defendants failed to provide Abe a wage statement with each payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

38.     Defendants did provide Abe with paystubs, but they only stated that she was being paid $4.00 per hour, typically for 45 hours per week, and noted that the employer was withholding Abe's taxes.

39.     Abe was provided a W-2 for use in filing her 2019 tax return.

40.     Despite typically working 45.50 hours per week, Abe was never paid overtime at a rate the higher of one and one-half times her regular hourly wage, or one and one-half times the applicable minimum wage.

41.     Despite typically working a spread of time greater than 10 hours 3 days per week, Abe was never paid for an extra hour each day she worked a spread of time greater than 10 hours at the applicable minimum wage rate.

42.     All tips left by credit card would be added together over a workweek, and divided evenly at the end of the workweek among all the servers who worked during that workweek.

43.     At the end of each shift, Mrs. Yamaguchi collected Abe's cash tips, and the tips of the other servers working during that shift. Mrs. Yamaguchi set aside 15% of the cash tip pool thus collected for the kitchen workers, including cooks and dishwashers. Mrs. Yamaguchi would then divide up the remaining tips evenly between the servers on duty that shift.

44.     Approximately 20% of the tips that customers left were left by cash; the remainder were left by credit card.

45.     Defendants committed the foregoing acts knowingly, intentionally, willfully, and maliciously against Abe, the Collective, and the Class.

## COLLECTIVE ALLEGATIONS

46.     Abe brings this action individually and on behalf of all other current and former non-exempt restaurant workers employed by Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

47.     Upon information and belief, 3 servers typically work the lunch shift; 4 servers typically work the dinner shift; and 2 dishwashers, 3 cooks, and 3 sushi chefs (including Mr. Yamaguchi) work all day.

48.     Upon information and belief, there are about 8 servers, and about 15 employees, on Corporate Defendant's payroll at any one time, not including the Individual Defendants.

49.     Upon information and belief, the cooks and the sushi chefs are long-term employees, but there is high turnover of servers and dishwashers.

## CLASS ALLEGATIONS

50.     Abe brings her state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt restaurant workers employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

51.     The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

**NUMEROSITY**

52.     The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

53.     Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

**COMMONALITY**

54.     There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members were paid less than the minimum wage; (3) whether the Class members were paid for overtime hours at rates one and one-half times their regular rates; (4) whether the Class members were paid an extra hour's pay at the minimum wage for each day their spread of time exceeded 10 hours; (5) whether the Class members were provided with wage notices adequate under Section 195.1 of the NYLL; (6) whether the Class members were provided with wage statements adequate under Section 195.3 of

the NYLL; and (7) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

**TYPICALITY**

55.     Abe's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

56.     All the Class members were subject to the same policy and practice of denying minimum wage and overtime.

57.     Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

58.     Abe and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

**ADEQUACY**

59.     Abe is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

60.     Abe is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

**SUPERIORITY**

61.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

62.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

63.     Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

64.     Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

65.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

66.     The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

67.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

68.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

69.    Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

70.    Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

**I.    VIOLATION OF SECTION 206 SUBSECTION A OF THE FLSA NONPAYMENT OF MINIMUM WAGE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE**

71.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.    Section 206, Subsection (a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at… $7.25 an hour, beginning 24 months after [the] 60th day [after May 25, 2007]."

73.    Section 203, Subsection (m), Paragraph (2), Subparagraph (A) of the FLSA provides that "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [$2.13 per hour]; and (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding two sentences shall not apply with respect to any tipped

employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

74.    Throughout her employment, Abe was paid $4.00 per hour, and was not informed of the provisions of Section 203(m) of the FLSA.

75.    Further, Defendants' tip pool included employees who do not customarily and regularly receive tips, including cooks.

76.    Accordingly, Defendants paid Abe less than the federal minimum wage without adequately claiming a tip credit which would have permitted them to do so.

77.    Section 216 of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

78.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Abe at least the minimum wage.

**II.    VIOLATION OF SECTION 652 OF THE NYLL AND 146-1.2 OF THE WAGE                                                                              ORDER NONPAYMENT OF MINIMUM WAGE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS**

79.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

80.     Section 652.1, Subsection (b) of the NYLL provides that "[e]very employer shall pay to each of its employees for each hour worked in the counties of Nassau, Suffolk, and Westchester a wage of not less than… $12.00 per hour on and after December 31, 2018, [and] $13.00 per hour hon and after December 31, 2019."

81.     Similarly, Section 146-1.2, Subsection (a), Paragraph (1), Subparagraph (ii) of the Wage Order provides that "The basic minimum hourly rate shall be, for each hour worked by employees, other than fast food employees, in [Nassau, Suffolk, and Westchester counties], … $12.00 per hour on and after December 31, 2018; [and] $13.00 per hour on and after December 31, 2019."

82.     Section 146-1.3 of the Wage Order provides that "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part."

83.     Section 146-2.2 of the Wage Order provides that "[p]rior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday."

84.     Section 146-2.2 substantially recapitulates the requirements of Section 195.1 of the NYLL.

85.     Section 146-2.9, Subsection (b) of the Wage Order provides that "[o]n any day that a service employee or food service worker works at a non-tipped occupation… for more than 20 percent of his or her shift… the wages of the employee shall be subject to no tip credit for that day."

86.     Throughout her employment, Abe was paid $4.00 per hour, and was not provided a wage notice compliant with Section 195.1 of the NYLL or Section 146-2.2 of the Wage Order.

87.     Further, Abe spent approximately 35% of each work day performing non-tipped side work.

88.     Further, Abe's hourly wage was below the applicable minimum wage minus the applicable tip credit in Nassau County throughout her employment.

89.     Accordingly, Defendants paid Abe less than the New York minimum wage without adequately claiming a tip credit which would have permitted them to do so.

90.     Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

91.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Abe at least the minimum wage.

**III.    VIOLATION OF SECTION 207 SUBSECTION A OF THE FLSA FAILURE TO PAY OVERTIME—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE**

92.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93.     Section 207, Subsection A, Paragraph 1 of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in

an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

94.    Abe was not exempt from the provisions of Section 207 of the FLSA under any of the categories delineated in Section 213 of the FLSA.

95.    Abe was paid her straight-time rate of $4.00 per hour for overtime hours—hours worked in excess of 40 per week.

96.    Accordingly, Abe was not paid overtime at a rate one and one-half times her regular hourly rate or the minimum wage, whichever is higher.

97.    Section 216, Subsection (b) of the FLSA provides that "[a]ny employer who violates the provisions of section 207… of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

98.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by denying Abe overtime pay.

**IV.    VIOLATION OF SECTION 146-1.4 OF THE WAGE ORDER FAILURE TO PAY OVERTIME—BROUGHT ON BEHALF OF THE PLAINTIFF**

99.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

100.    Section 146-1.4 of the Wage Order provides that "[a]n employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in

excess of 40 hours in one workweek. When an employer us taking a credit toward the basic minimum hourly rate pursuant to section 146-1.3 of this Subpart, the overtime rate shall be the employee's regular rate of pay before subtracting any tip credit, multiplied by 1½, minus the tip credit."

101.    Abe was paid her straight-time rate of $4.00 per hour for overtime hours—hours worked in excess of 40 per week.

102.    Accordingly, Abe was not paid overtime at a rate one and one-half times her regular hourly rate or the minimum wage, whichever is higher.

103.    Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

104.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by denying Abe overtime pay.

**V.    VIOLATION OF SECTION 203 SUBSECTION M OF THE FLSA MISAPPROPRIATION OF TIPS—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE**

105.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    Section 203, Subsection (m), Paragraph (2), Subparagraph (A) of the FLSA provides that "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to (i) the cash

wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [$2.13 per hour]; and (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding two sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

107.   Throughout her employment, Abe was required to contribute all her tips to a tip pool, 15% of which was distributed to employees who do not customarily and regularly receive tips, including cooks.

108.   Accordingly, Defendants misappropriated Abe's tips.

109.   Section 216 of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

110.   Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by misappropriating Abe's tips.

## VI.    VIOLATION OF SECTIONS 146-2.14 AND 146-2.6 OF THE WAGE ORDER
## MISAPPROPRIATION OF TIPS—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.    Similarly, Section 146-2.14, Subsection (e), of the Wage Order provides that "[e]ligibility of employees to receive shared tips, or to receive distributions from a tip pool, shall be based upon duties and not titles. Eligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental. Examples of eligible occupations include: (1) wait staff; (2) counter personnel who serve food or beverages to customers; (3) bus persons; (4) bartenders; (5) service bartenders; (6) barbacks; (7) food runners; (8) captains who provide direct food service to customers; and (8) hosts who greet and seat guests."

113.    Section 146-2.16, Subsection (b) of the Wage Order provides that "[o]nly food service workers may receive distributions from the tip pool."

114.    Section 146-3.4, Subsection (a) of the Wage Order provides that "[a] *food service worker* is any employee who is primarily engaged in the serving of food or beverages to guests, patrons, or customers in the hospitality industry, including, but not limited to, wait staff, bartenders, captains and bussing personnel; and who regularly receives tips from such guests, patrons, or customers." (emphasis in original).

115.    Throughout her employment, Abe was required to contribute all her tips to a tip pool, 15% of which was distributed to employees who do not customarily and regularly receive tips, including cooks.

116.    Accordingly, Defendants misappropriated Abe's tips.

117.    Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

118.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by misappropriating Abe's tips.

## VII.    VIOLATION OF SECTION 142-2.4 OF THE WAGE ORDER FAILURE TO PAY SPREAD-OF-TIME—BROUGHT ON BEHALF OF THE PLAINTIFF

119.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120.    Section 142-2.4 of the Wage Order provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."

121.    Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

122.    Abe regularly worked a spread of time of greater than 10 hours 3 days per week.

123.    Defendants knowingly, willfully and maliciously failed to pay Abe an additional hour's pay at the basic minimum hourly wage for each day she worked a spread of time greater than 10 hours.

**VIII. VIOLATION OF SECTION 195.1 OF THE NYLL FAILURE TO FURNISH WAGE NOTICE—BROUGHT ON BEHALF OF THE PLAINTIFF**

124.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125.    Section 195.1(a) of the NYLL provides that "[e]very employer shall provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

126.    Section 198, Subsection 1-b of the NYLL provides that "[i]f any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section on hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's

fees. The court may also award other relief, including injunctive or declaratory relief, that the court in its discretion deems necessary and appropriate."

127.    Abe was not provided a wage notice as provided by Section 195.1 of the NYLL within the first 10 business days of her employment or at any time thereafter.

128.    Defendants knowingly, willfully and maliciously failed to provide Abe a wage notice as provided by Section 195.1 of the NYLL within the first 10 business days of her employment or at any time thereafter.

## IX.    VIOLATION OF SECTION 195.3 OF THE NYLL FAILURE TO FURNISH WAGE STATEMENTS—BROUGHT ON BEHALF OF THE PLAINTIFF

129.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

130.    Section 195.3 of the NYLL provides that "[e]very employer shall furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked."

131.    Abe was furnished a wage statement with each payment of wages, but these wage statements were not compliant with Section 195.3 of the NYLL.

132.    Defendants knowingly, willfully and maliciously failed to furnish Abe a wage statement as provided by Section 195.3 of the NYLL with each payment of wages.

## DEMAND FOR TRIAL BY JURY

133.    Abe demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Abe, on behalf of herself and on behalf of the Collective, respectfully requests that this Court enter a judgment providing the following relief:

A.    At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt restaurant workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime pay;

B.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

C.    An injunction against Corporate Defendant, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

D.    An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and any opt-ins under FLSA;

E.    An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and the Class under NYLL and the Wage Order;

F.    An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

G.      An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Class under NYLL and the Wage Order;

H.      An award of misappropriated tips, and liquidated damages equal to misappropriated tips, due to Plaintiff and any opt-ins under FLSA;

I.      An award of misappropriated tips, and liquidated damages equal to misappropriated tips, due to Plaintiff and the Class under NYLL and the Wage Order;

J.      An award of unpaid spread-of-time, and liquidated damages equal to unpaid spread-of-time, due to Plaintiff and the Class under the NYLL and the Wage Order;

K.      An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage notice at time of hire or thereafter;

L.      An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage statement with each payment of wages;

M.      An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

N.      An award of reasonable attorneys' fees and costs;

O.      An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no appeal then being pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL; and

P.      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
       November 18, 2020

TROY LAW, PLLC
*Attorneys for Plaintiff, proposed FLSA*
*Collective, and potential Rule 23 Class*


 */s/ John Troy*_____
John Troy
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com